IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL WILDLIFE FEDERATION,<br>901 E Street N.W., Suite 400<br>Washington, D.C. 20004<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY,<br>Ariel Rios Federal Building<br>1200 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20460<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. _____<br><br><br><br>JUDGE _____ |

**PLAINTIFF'S COMPLAINT FOR JUDICIAL REVIEW OF AGENCY ACTION,
DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.　　This is an action for declaratory judgment and injunctive relief challenging a portion of a regulation as applied by Defendant United States Environmental Protection Agency ("EPA" or "the Agency"). That portion of the regulation mandates that EPA exclude from the Agency's Vessel General Permit ("VGP") any more stringent conditions the New York State Department of Environmental Conservation ("the Department") adds to its certification of the VGP, which authorizes the discharge of ballast water. Such an exclusion is contrary to Section 401 of the Federal Water Pollution Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1341, and will operate to the injury of Plaintiff National Wildlife Federation ("NWF") and its members by

1

stripping the State of New York of its Congressionally-recognized authority to establish conditions as stringent as necessary to assure that discharges authorized by the VGP comply with state water quality standards.

2. This action arises under and alleges violations of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-706. Specifically, EPA's action will constitute the application of a portion of a regulation in excess of statutory jurisdiction, authority, or limitations, or short of statutory right under 5 U.S.C. § 706(2)(C) and the Clean Water Act, particularly section 401.

3. NWF seeks a declaration that EPA's application of the portion of the regulation codified at 40 C.F.R. § 124.55(b) ("the Regulation"), mandating the Agency's exclusion from the VGP of any more stringent conditions the Department adds to its certification of the VGP, will violate the Clean Water Act, section 401 particularly. NWF also seeks an injunction prohibiting EPA and all of the Agency's officers, agents, servants, and employees, and those persons in active concert and participation with them, from applying the portion of the Regulation to exclude from the VGP any more stringent conditions the Department adds to its certification of the VGP.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 (federal question), 2201 (declaratory judgment), and 2202 (injunctive relief), as well as by virtue of 5 U.S.C. § 702 (judicial review of administrative action.)

5. Venue is properly vested in the District of Columbia pursuant to 28 U.S.C. § 1391(e) because NWF and EPA reside in the District.

## THE PARTIES

6. NWF is a nonprofit corporation organized and existing under the laws of the

District of Columbia.  NWF is a national organization with approximately 718,000 members nationwide, 237,000 members in the states bordering the Great Lakes, and 54,000 members in the State of New York.  NWF's mission is to work through advocacy and education to conserve natural resources and the wildlife that depends on natural resources.  NWF has its principal office in Reston, Virginia, a National Advocacy Center in Washington, D.C., a Great Lakes Regional Center in Ann Arbor, Michigan, and offices in other states.

7. NWF brings this action on behalf of its members. The interests of Plaintiff's members fall within the zone of interests protected under the Clean Water Act.

8. NWF's members regularly use and enjoy the fish, wildlife, water, and other natural resources of the waters of the United States, including, but not limited to, the Great Lakes and their tributaries, for a variety of recreational, educational, and aesthetic purposes, including, but not limited to, boating, fishing, swimming, wildlife observation, photography, nature, study, and aesthetic appreciation.  NWF's members intend to continue these pursuits on an ongoing basis in the future and to continue to derive recreational, educational, and aesthetic benefits from the natural resources of these aquatic ecosystems.

9. The certainty that EPA will apply a portion of the Regulation to exclude more stringent conditions the State of New York adds to its certification of the VGP is substantially likely to lead the New York Supreme Court to dismiss NWF's petition challenging the sufficiency of the Department's certification of the VGP.  Dismissal will deprive NWF and its members of the opportunity provided by the laws of the State of New York to obtain judicial review of the Department's certification.  As a result, the insufficiently stringent conditions in the certification will not prevent the introduction and spread of new invasive species in New York waters, to the great and irreparable harm of NWF and its members' recreational,

educational, and aesthetic use and enjoyment of those waters.

10. EPA is the federal agency with primary responsibility for implementing the Clean Water Act. EPA promulgated the Regulation, which in part mandates that EPA exclude from a National Pollutant Discharge Elimination System ("NPDES") permit more stringent conditions a State adds to its certification of the permit, if the State submits the additional conditions after the Agency issues the permit.

## STATEMENT OF THE CASE

### Statutory and Regulatory Background

11. The objective of the Clean Water Act is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C.A. 1251(a).

12. Upon enacting the Clean Water Act, Congress expressed a policy "to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution." 33 U.S.C. § 1251(b).

13. Under Section 401 of the Clean Water Act, applicants for a federal permit for any activity that may result in a discharge to navigable waters must provide the federal permitting agency with a certification from the state where the discharge will originate confirming that the discharge will comply with applicable state water quality standards, among other applicable state requirements. 33 U.S.C. § 1341(a)(1).

14. Section 401 of the Clean Water Act further specifies that states must add conditions to federal permits to assure compliance with state water quality standards: "Any certification provided under this section shall set forth any effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a Federal license or permit will comply with" applicable state water quality standards. 33 U.S.C. §

1341(d). Such limitations and requirements "shall become a condition on any Federal license or permit subject to the provisions of this section." *Id*.

15.     The Regulation governs EPA's response if a state modifies a certification of a NPDES permit by adding more stringent conditions following a ruling by a court of competent jurisdiction staying, vacating, or remanding a certification. 40 C.F.R. § 124.55(b). Under the Regulation, EPA's response depends on whether the agency receives additional, more stringent conditions before or after it has issued the NPDES permit. *Id.*

16.     If EPA receives additional, more stringent conditions before it issues the NPDES permit, the Regulation requires the Agency to make the permit "consistent with the more stringent conditions which are based upon State law identified in such certification." 40 C.F.R. § 124.55(b).

17.     If EPA receives additional, more stringent conditions after it has issued the NPDES permit, however, the Regulation requires the Agency to exclude the more stringent conditions from the permit, even if the more stringent conditions are based upon state law and necessary to assure that the discharges authorized by the NPDES permit will comply with applicable state water quality standards. *See* 40 C.F.R. § 124.55(b).

Factual Background

18.     Vessels routinely discharge ballast water into navigable waters of the United States. These discharges may and often do contain aquatic nonindigenous plant and animal species as well as pathogens, such as bacteria and viruses, which constitute pollutants under the Clean Water Act.

19.     These biological materials contained in ballast water can establish and have established reproducing populations in the navigable waters of the United States, including the

Great Lakes and their tributaries. These aquatic invasive species can cause and have caused extensive harm to the uses of the navigable waters of the United States, including the Great Lakes and their tributaries, for public water supply, propagation of fish and wildlife, recreation, and agricultural, industrial, and other purposes, as well as significant costs to the economy, estimated in the billions of dollars.

20. On December 8, 2011, pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, EPA proposed to issue the VGP, a NPDES permit to regulate discharges incidental to the normal operation of commercial vessels, including discharges of ballast water. 76 Fed. Reg. 76716 (Dec. 8, 2011). Under EPA's proposal, the VGP would take effect on December 19, 2013.

21. On December 16, 2011, pursuant to Section 401 of the Clean Water Act, 33 U.S.C. § 1341, EPA asked the Department to certify the proposed VGP

22. On May 16, 2012, the Department issued a draft certification of the VGP.

23. On June 6, 2012, NWF submitted extensive comments to the Department regarding its draft certification. NWF called on the Department to revise the draft certification by adding more stringent conditions because the Department's conditions will not prevent the introduction or spread of new aquatic non-indigenous species or the establishment or spread of new aquatic invasive species.

24. On September 26, 2012, the Department issued a final certification of the VGP. The Department did not make any of the changes NWF called for, but included conditions the Department claimed are more stringent than those in the VGP.

25. The conditions the Department included in its certification of the VGP are not stringent enough. As a result, aquatic nonindigenous species and pathogens are likely to be

6

discharged by vessels at a level that will result in the introduction and spread of new invasive species or the spread of aquatic invasive species, causing, having the reasonable potential to cause, or contributing to a violation of New York water quality standards. This will interfere with or eliminate the use and enjoyment of New York waters by members of NWF.

26. On November 7, 2012, NWF commenced an Article 78 proceeding in the Supreme Court of the State of New York for the County of Albany pursuant to N.Y. C.P.L.R. §§ 7801 and 7803. *National Wildlife Federation v. Martens*, Index No. 6181-12 (N.Y. Sup. Ct.). NWF alleges that the Department's certification of the VGP is affected by errors of law and is arbitrary and capricious. NWF further alleges that the conditions the Department included in the certification do not assure that vessels discharging ballast water will comply with New York water quality standards. NWF seeks an expedited judgment ordering the Department to modify its certification of the VGP by adding more stringent conditions to assure that vessels discharging ballast water comply with New York water quality standards, as required by CWA § 401 and 6 NYCRR 608.9(a). The Lake Carriers' Association and the Canadian Shipowners Association ("Intervenors") intervened in support of the Department.

27. The New York Supreme Court has not yet ruled on NWF's Article 78 petition.

28. On March 28, 2013, EPA signed the VGP, and EPA published notice of its signing in the Federal Register on April 12, 2013. 78 Fed. Reg. 21938 (Apr. 12, 2013). The VGP became final on April 26, 2013. 40 C.F.R. § 23.2(a).

29. Based on the dictates of the Regulation, on April 30, 2013, the Intervenors asked the New York Supreme Court for the County of Albany to dismiss as moot *National Wildlife Federation v. Martens*. NWF has asked the New York court for an opportunity to be heard on this request.

30. On May 2, 2011, NWF petitioned EPA to rescind the Regulation on the ground that it mandates the exclusion of modifications to a certification made after the Agency issues a permit, but the Regulation remains in force.

31. Unless the Court prohibits EPA from applying the Regulation, the New York state court is substantially likely to dismiss *National Wildlife Federation v. Martens*, and could dismiss the case at any time, with or without briefing, before this Court can decide the merits in this matter.

32. Dismissal of *National Wildlife Federation v. Martens* will foreclose the opportunity provided by the laws of the State of New York to obtain judicial review of the Department's certification.

33. As a result of the dismissal of *National Wildlife Federation v. Martens*, the insufficiently stringent conditions in the certification will not prevent the introduction and spread of new invasive species in New York waters, to the great and irreparable harm of NWF and its members' recreational, educational, and aesthetic use and enjoyment of those waters.

## CLAIM FOR RELIEF

### Cause of Action

(Application of 40 C.F.R. § 124.55(b) will violate the Clean Water Act and the Administrative Procedure Act)

34. NWF re-alleges and incorporates by this reference the allegations set forth in paragraphs 1 through 33, above.

35. EPA's exclusion from the VGP of more stringent conditions the Department adds to its certification of the VGP, pursuant to a portion of the regulation codified at 40 C.F.R. § 124.55(b), would be in excess of EPA's statutory jurisdiction, authority, or limitations, or short of statutory right under the Clean Water Act, particularly section 401.

**PRAYER FOR RELIEF**

WHEREFORE, NWF respectfully requests that the Court grant the following relief:

(1) Adjudge and declare that the regulation codified at 40 C.F.R. § 124.55(b), as applied to exclude from the VGP more stringent conditions the Department adds to its certification of the VGP, would be in excess of EPA's statutory jurisdiction, authority, or limitations, or short of statutory right under the Clean Water Act;

(2) Issue an injunction prohibiting EPA and all of the Agency's officers, agents, servants, and employees, and those persons in active concert and participation with them, from applying the regulation codified at 40 C.F.R. § 124.55(b) to exclude from the VGP more stringent conditions the Department adds to its certification of the VGP;

(3) Award NWF its reasonable fees, costs, expenses, and disbursements, including attorney fees, associated with this litigation; and

(4) Grant NWF such further and additional relief as the Court deems just and proper.

Respectfully submitted,

/s/ Janice L. Goldman-Carter
Janice L. Goldman-Carter
Attorney for Plaintiffs
D.C. Bar No. 415773
National Wildlife Federation
901 E Street N.W., Suite 400
Washington, D.C. 20004
goldmancarterj@nwf.org
Tel.: 202-797-6894

/s/ Neil S. Kagan
Neil S. Kagan
Attorney for Plaintiffs
Motion for Appearance *pro hac vice* forthcoming
National Wildlife Federation
625 South State Street
745 Legal Research

9

>Ann Arbor, Michigan 48109
>kagan@nwf.org
>Tel.: 734-763-7087

Dated: May 1, 2013