**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL WILDLIFE FEDERATION, <br><br>    Plaintiff, <br><br>    v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, <br><br>    Defendant, <br><br> LAKE CARRIERS' ASSOCIATION, *et al.*, <br><br>    Defendant-Intervenors. | **Civil Action No. 13-617 (CKK)** |

**MEMORANDUM OPINION**
(May 16, 2013)

The National Wildlife Federation filed suit under the Administrative Procedure Act

("APA"), 5 U.S.C. § 701 *et seq.*, against the United States Environmental Protection Agency

challenging 40 C.F.R. § 124.55(b), which governs certain discharge permits issued by the EPA

pursuant to the Clean Water Act.   Presently before the Court are Plaintiff's [7] Motion for

Temporary Restraining Order and [8] Motion for Preliminary Injunction, as well as the EPA and

Defendant-Intervenors' [19, 30] Motion to Dismiss.   Upon consideration of the pleadings,[1] the

relevant legal authorities, and the record as a whole, the Court finds the Plaintiff fails to state a

---

[1]   Def.'s Mot. to Dismiss, ECF No. [19]; Def.-Intervs.' Mot. to Dismiss, ECF No. [30];
Pl.'s Opp'n, ECF No. [26]; Def.'s Reply, ECF No. [29].   To the extent relevant to the motion to
dismiss, the Court also considered the parties' pleadings filed in connection with the Plaintiff's
motion for a temporary restraining order.   *See* Pl.'s Mot. for TRO, ECF No. [7]; Def.'s Opp'n,
ECF No. [20]; Def.-Intervs.' Opp'n, ECF No. [31]; Pl.'s Reply to Def.'s Opp'n, ECF No. [25];
Pl.'s Reply to Def.-Intervs.' Opp'n, ECF No. [32].   In its discretion, the Court finds that oral
arguments would not assist the Court in renderings its decision on the Plaintiff's motions.   See
Local Civ. R. 7(f), 65.1(d).

claim under the APA. Without a valid claim, preliminary injunctive relief is unwarranted.

Accordingly, the EPA and Defendant-Intervenor's motion to dismiss is GRANTED and the

Plaintiff's motions are DENIED.

## I. BACKGROUND

A.    *Statutory Framework*

The Clean Water Act generally prohibits the discharge of pollutants except in compliance

with the Act. 33 U.S.C. § 1311(a). One program that regulates permits for the discharge of

pollutants is the National Pollutant Discharge Elimination System, or NPDES. *Id.* § 1342. A

party seeking a discharge permit under the NPDES must obtain "a certification from the State in

which the discharge originates or will originate . . . that any such discharge will comply with the

applicable provisions [of the Clean Water Act]." *Id.* § 1341(a)(1).[2] The certification must set

forth

> [A]ny effluent limitations and other limitations, and monitoring requirements
> necessary to assure that any applicant for a Federal [] permit will comply with any
> applicable effluent limitations and other limitations, . . . standard of performance
> under section 1316 of this title, or prohibition, effluent standard, or pretreatment
> standard under section 1317 of this title, and with any other appropriate
> requirement of State law set forth in such certification, and shall become a
> condition on any Federal license or permit subject to the provisions of this
> section.

*Id.* § 1341(d); *see generally* 40 C.F.R. § 124.53. The EPA may not issue a permit until the state

issues or waives the certification. *Id.*

The EPA may issue a general permit covering "one or more categories or subcategories

of discharges . . . within a geographic area." 40 C.F.R. § 122.28(a)(1). Before issuing the

permit, the EPA publishes a draft permit, including the proposed conditions and monitoring

---

[2]    Section 1341 corresponds to section 401 of the Clean Water Act, thus the state
certifications are often referred to as "401 certifications."

requirements, in the Federal Register.  *Id.* § 124.6(e).  Following a notice and comment period and receipt of the relevant state certification(s) (or waiver thereof), the EPA issues the final permit.  *Id.; id.* at §§ 124.15(a), 124.55(b).  EPA regulations provide that, consistent with the "reasonable time" requirement of section 1341(a)(1), state certification must be granted or denied within sixty days.  40 C.F.R. § 124.53(c)(3), (d).  If a state has not granted, denied, or waived certification by the time the draft VGP is prepared, the EPA sends a copy of the draft permit to the state and indicates that the state will be deemed to have waived its right to certify unless it does so within sixty days from the date the draft permit is mailed.  Id. § 124.53(c)

"If there is a change in the State law or regulation upon which a certification is based," the state may issue a modified certification.  40 C.F.R. § 124.55(b).  If the EPA receives the modified certification before the final permit issues, "the permit shall be consistent with the more stringent conditions which are based upon State law identified in such certification."  However,

> If the certification or notice of waiver is received after final agency action on the permit, the [EPA] may modify the permit on request of the permittee *only* to the extent necessary to delete any conditions based on a condition in a certification invalidated by a court of competent jurisdiction or by an appropriate State board or agency.

*Id.* (emphasis added).  Section 124.55 was promulgated in 1980 as part of a comprehensive revision of the procedures governing the NPDES.  *Natural Res. Def. Council v. EPA*, 673 F.2d 400, 401-02 & n.1.  The Complaint challenges the validity of the portion of section 124.55(b) that prohibits the EPA from modifying permits to include more stringent conditions added to a state certification after a permit issues.

B.    *Vessel General Permit & Litigation History*

In 2009, several states and environmental organizations sued the EPA in the United States Court of Appeals for the District of Columbia Circuit challenging a vessel general permit

("VGP") governing ballast water discharge, issued by the EPA on December 29, 2008, and set to expire on December 18, 2013. *See generally Natural Res. Def. Council v. EPA*, No. 09-1089 (D.C. Cir. filed Mar. 9, 2009). As part of a consent decree resolving the various petitions, the EPA agreed to promulgate a new VGP to take effect in December 2013 by no later than November 30, 2012. Def.-Intervs.' Ex. 1 (Consent Decree) ¶ 5. The parties later extended the deadline for final issuance of the permit to March 15, 2013. *Natural Res. Def. Council v. EPA*, No. 09-1089, Notice of Filing of Settlement Agreement Modifications, ¶ 3 (D.C. Cir. filed Nov. 30, 2012). The EPA published a draft of the replacement VGP in the Federal Register on December 8, 2011. 76 Fed. Reg. 76,716 (Dec. 8, 2011). The proposed VGP "would authorize discharges incidental to the normal operation of non-military and nonrecreational vessels greater than or equal to 79 feet in length." *Id.* The draft permit "propos[ed] new, more stringent numeric technology-based effluent limitations that are applicable to vessels with ballast water tanks and will largely replace the non-numeric effluent limitations for ballast water" contained in the 2008 permit challenged in the D.C. Circuit. *Id.* at 76,720.

The EPA sent a request for certification to the states on December 16, 2011. Compl. ¶ 21. Pursuant to the terms of the consent decree, the states had at least six months to submit certifications to the EPA, rather than the usual sixty days. Def.-Intervs.' Ex. 1 ¶ 7. The Plaintiff submitted "extensive comments" to the New York State Department of Environmental Conservation regarding its draft certification. *Id.* at ¶ 23. New York issued the certification on September 26, 2012. *Id.* at ¶ 24. The certification purportedly did not include any of the changes advocated by the Plaintiff, "but included conditions the [state] claimed are more stringent than those in the VGP." *Id.* Asserting the conditions in the certification are not stringent enough, the Plaintiff filed suit in Supreme Court of the State of New York on

4

November 7, 2012 challenging the certification by way of an Article 78 petition. *Id.* at ¶¶ 25, 26. The Defendant-Intervenors in this matter have also intervened in the New York case. The state court has yet to rule on the Plaintiff's petition. *See Nat'l Wildlife Fed. v. Martens*, No. 6181-12 (N.Y. S. Ct. Filed Nov. 7, 2012).

After a notice and comment period, the EPA published a notice of final permit issuance on April 12, 2013. 78 Fed. Reg. 21,938 (Apr. 12, 2013). The VGP was considered issued as of April 26, 2013, and will take effect December 19, 2013. *Id.* at 21,939. The Plaintiff filed suit in this Court on May 1, 2013, and simultaneously sought a temporary restraining order and preliminary injunction. The Plaintiff argues that absent preliminary relief, the New York court may dismiss the Plaintiff's petition as moot insofar as even if the New York court orders the state to revise the certification to add more stringent conditions, the EPA will not incorporate more stringent conditions into the VGP in light of section 124.55(b). As to the merits generally, the Plaintiff argues that section 124.55(b) violates 33 U.S.C. § 1341(d) (section 401(d) of the Clean Water Act), which, according the Plaintiff, "expressly and unequivocally requires EPA to incorporate certification conditions in the VGP if New York deems them necessary to assure compliance with state water quality standards," regardless of when the certification is modified. Pl.'s Opp'n at 5-6.

During the on the record conference call held with Plaintiff and Defendant on May 2, 2013,[3] the Plaintiff explained that although no motion to dismiss had been filed, in a letter to the New York court, the Defendant-Intervenors suggested that the case was moot in light of the issuance of the VGP. The Plaintiff subsequently obtained an order from the New York court

---

[3] The Defendant-Intervenors did not move to intervene in this matter until May 10, 2013. Mot. to Intervene, ECF No. [21].

requiring the state of New York and the Defendant-Intervenors to show cause why the case should not be stayed pending a final judgment in this action.  Order to Show Cause, ECF No. [18-1].  The state of New York and the Defendant-Intervenors have filed oppositions to the Plaintiff's request for a stay.  Aff. of L. Rappoport, ECF No. [27-1]; Aff. of M. Melewski, ECF No. [33-1].  Acting New York State Supreme Court Justice Thomas J. McNamara issued a letter to the parties on May 10, 2013, indicating that the state of New York should file a motion to dismiss the matter as moot.  5/10/13 Ltr, ECF No. [28-1].  If the state does not file a motion to dismiss within thirty days, Justice McNamara intends to resolve the case on the merits.  *Id.*

The EPA moves to dismiss the Complaint for lack of subject matter jurisdiction, arguing that a facial challenge to section 124.55(b) is untimely, and that in any event, a challenge to the regulation or the VGP itself must be brought in the Court of Appeals.  The Plaintiff does not dispute the EPA's jurisdictional arguments, but rather contends that it has brought a timely as-applied challenge to the regulation, which may be heard in District Court.  For its part, the EPA argues that the Plaintiff has failed to state a valid as-applied challenge because it fails to identify a final agency action for the Court to review.  Even if the Plaintiff has adequately pled a final agency action for purposes of an as-applied challenge, the EPA further argues that the Plaintiff lacks standing to bring an as-applied challenge, and such a claim is not yet ripe.

Normally the Court would reach the issue of standing first to assure itself that it has jurisdiction over the case.  However, the EPA argues the Plaintiff lacks standing to bring an as-applied challenge to a particular final agency action.  Before the Court can consider the Plaintiff's standing in that context, the Court must determine what, if any, final agency action the Plaintiff is challenging, which is precisely the basis for the EPA's argument that the Plaintiff fails to state a claim.  Therefore, in this unique circumstance, the Court must consider the EPA's

non-jurisdictional argument first.  The Court agrees with the EPA's threshold argument that the Plaintiff fails to state a claim under the APA challenging the regulation at issue as applied, therefore the case is not ripe and the case shall be dismissed.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  The Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]."  *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (citations omitted).

## III.  DISCUSSION

The Administrative Procedure Act provides that "[a]gency action made reviewable by statute and *final* agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704 (emphasis added).  An "as-applied" challenge "must rest on final agency action under the APA," taken within six years of the filing of the complaint.  *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997).

> As a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decisionmaking process, it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow[.]"

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  The EPA "action" identified by the Plaintiff as the basis for its as-applied challenge fails to satisfy either requirement for finality.

### A.     Consummation of the Agency Decision-making Process

The Plaintiff argues that "[i]n this case, EPA's issuance of the final VGP marked the consummation of the Agency's decision-making process with regard to the application of the Regulation."  Pl.'s Opp'n at 4.  This assertion is simply incorrect.  Initially, the Court notes the Plaintiff took the opposite position in its motion for a temporary restraining order, arguing that it is "challenging EPA's application only of that portion of the Regulation that controls the Agency's action *after* its final action on the VGP. EPA's exclusion of more stringent conditions that New York submits in the future therefore would necessarily occur after, not in the process of, actions approving or promulgating any effluent limitation or issuing or denying any permit."  Pl.'s Mot. for TRO at 27 (citation omitted).   The Court agrees with the Plaintiff's initial assessment that the regulation concerns action *after* the issuance of the VGP, and final agency action by the EPA with respect to the regulation has not yet occurred in this case despite the final issuance of the VGP itself.

Additionally, the EPA has yet to make a decision as to whether the regulation would apply to the underlying VGP because no state, including New York, has adopted more stringent conditions for their respective certifications for the permit since the permit issued on April 26, 2013.  By definition, the EPA cannot make a decision regarding the incorporation of more stringent conditions into a VGP until a state attempts to impose more stringent conditions as part of its 401 certification.  The Plaintiff argues that "[a]t this point, EPA has no discretion to choose

some course other than applying the Regulation." Pl.'s Opp'n at 5. This statement, if true, has been true *since the regulation was promulgated* in 1980. Application of the regulation "is certain," Pl.'s Opp'n at 5, because of the mandatory language of the regulation, *not* because of the finalization of *this* permit. Thus, if the relevant "final agency action" took place at the point at which the EPA eliminated its discretion as to whether to apply the regulation, the Plaintiff's cause of action accrued in 1980, and is therefore untimely. *See* 28 U.S.C. § 2401(a) ("Except as provided by chapter 71 of title 41, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.").

The fact that an agency *will* apply a regulation if certain events take place in the future does not satisfy the final agency action requirement for purposes of an as-applied challenge. In *Dunn-McCampbell*, the National Park Service enacted a regulation requiring mineral developers to submit a plan of operations before extracting subsurface minerals. 112 F.3d at 1285. The plaintiff, which owned the mineral rights on Padre Island, argued that the "severity" of the regulations deterred oil companies from entering into leases to extract the subsurface minerals. *Id.* at 1286. Without a developer, the plaintiff never submitted a plan of operations under the regulations for Padre Island, yet sought to bring an as-applied challenge to the regulations in federal court. *Id.* The Fifth Circuit rejected the plaintiff's claim, finding that the plaintiff was required to show that the National Park Service applied the regulations to the plaintiff with respect to the Padre Island mineral rights. *Id.* at 1287-88. The court recognized that the plaintiff "arguably might challenge a Park Service denial of a proposed plan of operations," or "challenge action that the Park Service took to block the companies' access to their mineral estate," but the plaintiff failed to show these or any other applications of the regulations to the plaintiff. *Id.* at 1288. The application of the regulations may have been "inevitable" if the Plaintiff elected to

develop the subsurface minerals, but until the National Park Service took some action with respect to the plaintiff in connection with the regulations, no "final agency action" had taken place.  Accordingly, the court found the plaintiff failed to state an as-applied challenge to the regulations.  *Id.*; *see also Cellular Telecomms. & Internet Ass'n v. FCC*, 330 F.3d 502, 508-09 (2003) (finding the plaintiff could not bring an as-applied challenge to regulation requiring portability of cellular telephone numbers until the FCC took enforcement action against the plaintiff under the rule).

The National Wildlife Federation attempts to distinguish *Dunn-McCampbell* on the grounds that the "National Park Service had taken no action that demanded the plaintiff's immediate compliance with regulations requiring a mineral developer to submit a plan of operations, because the plaintiff had never sought to exercise its mineral rights."  Pl.'s Opp'n at 6.  The same is true in the present case: the EPA has never taken action under, or refused to take action because of, section 124.55(b), because the state of New York has not revised its certification to include more stringent conditions.  The application of the regulations in *Dunn-McCampbell* was as "certain" as the application of section 124.55(b), but in both cases, until the agency took some action under the regulation, the plaintiff could not state an as-applied challenge.

In essence, the Plaintiff is challenging the EPA's *failure to act*, namely, its failure to revise the VGP to include more stringent conditions (because of section 124.55(b)).  Under the APA, a party may seek to "compel agency action unlawfully withheld."  5 U.S.C. § 706(1).  The Plaintiff asserts as much here: the EPA refuses to incorporate more stringent conditions into the VGP as (purportedly) required by the Clean Water Act.  Compl. ¶ 35.  However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency

action that it is *required* to take." *Norton v. South Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). The Plaintiff asserts that the EPA failed to take a discrete agency action—adding more stringent conditions to the VGP. But even under the Plaintiff's reading of the Clean Water Act, the EPA is not *required* to take any action unless and until a state adopts more stringent conditions. In other words, the EPA's action is not "unlawfully withheld" until the state actually adopts more stringent conditions. Thus, whether viewed as a challenge to final agency action or unlawfully withheld agency action, the Plaintiff failed to state a claim under the Administrative Procedure Act.

      *B.*      *Action from Which Legal Consequences Will Flow*

With respect to the second requirement, the regulation has no "legal consequences" with respect to the VGP until the state adopts more stringent conditions. If a state never revises the conditions included in its certification, section 124.55(b) is irrelevant. It is only when a state actually revises the conditions that this regulation determines the obligations of the permitee. The Plaintiff suggests that the regulation has present legal consequences because "[a]s far as the New York state court is substantially likely to be concerned, it must dismiss NWF's challenge to the certification as moot." Pl.'s Opp'n at 5. This argument is unpersuasive, for two reasons. First, the New York litigation has *not* been dismissed. In fact, rather than dismiss the action sua sponte as the Plaintiff feared, Justice McNamara instructed the state to file a motion to dismiss, and absent such a motion Justice McNamara intends to decide the case on the merits. Second, this argument conflates *practical consequences* in a legal context with *legal consequences*. The EPA has not issued an order or regulation that binds the New York court in some way. Rather, the New York court may (or may not) find as a practical matter that reaching the merits of the Plaintiff's petition would be futile. Practical consequences of preliminary agency action are not

equivalent to the legally binding consequences that characterize final agency actions that may be challenged in federal court.  *See Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003) ("No legal consequences flow from the agency's conduct to date, for there has been no order compelling Reliable to do anything.  To be sure, there may be practical consequences, namely the choice Reliable faces between voluntary compliance with the agency's request for corrective action and the prospect of having to defend itself in an administrative hearing should the agency actually decide to pursue enforcement.  But the request for voluntary compliance clearly has no legally binding effect.").  At this point, the Plaintiff failed to identify any *legal* consequences that necessarily "*will* flow" from the EPA's "action" to date, therefore the Plaintiff fails to identify a final agency action for the Court to review as required to state a claim under the Administrative Procedure Act.  Furthermore, absent a final action by the relevant agency, the case is not ripe for consideration by the Court.  *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (discussing prudential ripeness); *see also id.* ("In the context of agency decision making, letting the administrative process run its course before binding parties to a judicial decision prevents courts from entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference in an ongoing decision-making process.").

C.       *Exception to the Finality Requirement*

In the alternative, the Plaintiff urges the Court to make an exception to the finality requirement.  Pl's Opp'n at 7-8.  Relying on the Fifth Circuit's decision in *Coca-Cola Co. v. Federal Trade Commission*, 475 F.2d 299 (5th Cir. 1973), the Plaintiff notes that "[o]ther courts have made exceptions to the finality requirement."  Pl.'s Opp'n at 7-8.  The *Coca-Cola* court recognized that an exception "to the general rule against judicial consideration of interlocutory

agency rulings" may exist in cases "where an agency has exercised authority in excess of its jurisdiction or otherwise acted in a manner that is clearly at odds with the specific language of a statute."  475 F.2d at 303 (citing *Leedom v. Kyne*, 358 U.S. 184 (1958)).  By definition this exception cannot apply where, as here, the agency has yet to take any action and (even under the Plaintiff's theory of the case) the agency is not required to take a certain action until some point in the future.

Moreover, the equitable considerations the Plaintiff cites do not warrant invocation of this "narrow" exception. *McClendon v. Jackson Television, Inc.*, 603 F.2d 1174, 1177 (5th Cir. 1979) ("This Court has noted on more than one occasion that the *Leedom v. Kyne* exception is narrow and rarely successfully invoked and that the error must be of a Summa or Magna quality as contraposed to decisions which are simply Cum error.") (citations omitted).  The Plaintiff argues that the Court should apply this exception because "[i]f the Court makes no exception, NWF would never have recourse to judicial review."  Pl.'s Opp'n at 7.  But the Plaintiff *did* have the opportunity to seek judicial review of both the regulation and the conditions in the certification, it simply did not do so in a timely fashion.  With respect to the regulation, the Plaintiff could have sought review of the regulation when it was first promulgated, but did not do so.  If a state ever issues more stringent conditions and the EPA refuses to incorporate those conditions into the VGP, the Plaintiff may also file suit at that point to challenge the regulation.[4] In terms of the New York certification, the Plaintiff sought judicial review, but the New York court elected not to rule on the Plaintiff's petition before the permit issued.  As the Plaintiff demonstrated with its (albeit unsuccessful) challenge to Minnesota's 401 certification for the VGP underlying this case, as a general matter parties can avail themselves of judicial review of

---

[4] Of course, the Plaintiff would have to demonstrate standing to bring such a challenge.

state certifications before the VGP issues and states are willing to expedite that review.  See In re

401 Water Quality Certification, 822 N.W.2d 676 (Minn. App. 2012) (rejecting the Plaintiff's

challenge to Minnesota's 401 certification on the merits).  Moreover, based on the parties'

pleadings, it appears this is a unique case in which the compressed timeframe for issuance of the

VGP required swifter action on the part of the states.  Because the EPA was Court-ordered to

issue the final rule by a date certain, the EPA would have lacked discretion to consider a stay of

the final issuance of the VGP pending state court review of certifications even if the Plaintiff had

sought such a stay.  The Plaintiff offers no reason to believe that in the normal permitting process

that the final permit will issue before state courts have the opportunity to review certifications, if

challenged.  Ultimately, the New York litigation has not been dismissed, so the Court cannot say

that absent review here, the state certification will be unreviewable.  On this record, there is no

basis for the Court to invoke an incredibly narrow exception to the finality requirement of the

Administrative Procedure Act in order to review an action the EPA has not yet taken and has no

obligation to take at this time, simply because the Plaintiff's litigation strategy may prove to be

unsuccessful.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds the Plaintiff fails to state a claim raising an as-

applied challenge to 40 C.F.R. § 124.55(b).  The EPA has yet to take any action applying the

regulation with respect to the Plaintiff or the vessel general permit at issue, and until a state

imposes more stringent conditions on a certification for the permit, the EPA is under no (even

arguable) legal obligation to take any action.  The EPA also has not taken any "action" from

which legal consequences will flow.  Therefore, the EPA has not taken any final agency action

sufficient to trigger review under the Administrative Procedure Act, and the Plaintiff's claim is

14

not ripe.  Moreover, the record in this case does not justify invoking any exception to the finality

requirement.  Absent a valid claim, the Court lacks any basis on which to evaluate the Plaintiff's

request for preliminary injunctive relief.  Accordingly, the EPA and Defendant-Intervenors's [19,

30] Motion to Dismiss is GRANTED and the Plaintiff's [7] Motion for Temporary Restraining

Order and [8] Motion for Preliminary Injunction are DENIED.

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE